UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD SOLETHER,               ) 3:10CV0346
                                )
            Petitioner,         )
                                )
                                ) JUDGE DAN AARON POLSTER
        v.                      ) (Mag. Judge Kenneth S. McHargh)
                                )
JESSE WILLIAMS,                 )
            Warden,             )
                                )
            Respondent          ) REPORT AND
                                ) <u>RECOMMENDATION</u>


McHARGH, MAG. J.

       The petitioner, Richard Solether ("Solether"), has filed a petition for a writ of

habeas corpus arising out of his 2007 conviction for the crime of rape, in the Wood

County (Ohio) Court of Common Pleas.  (<u>Doc. 1</u>.)

       Solether filed his petition through counsel, based on four grounds:

       1.  The state violated Richard Solether's due process rights when it
       failed to disclose that Ms. Boren had failed a polygraph test.

       2.  The state violated Richard Solether's Sixth Amendment
       Confrontation rights, right to present a complete defense, and Fifth
       and Fourteenth Amendment rights to a Fair Trial by not disclosing
       Ms. Boren's failed polygraph test results.

       3.  The state violated Richard Solether's Sixth Amendment rights to
       confront his accuser and present a complete defense when he was
       barred from impeaching Boren with evidence of her prior inconsistent
       conduct.

       4.  The cumulative effect of all errors violated petitioner's due process
       right to a fair trial.

(Doc. 1, at § 12.)

The respondent contends that the petition should be denied.  (Doc. 8.)

## I. FACTUAL AND PROCEDURAL BACKGROUND

The court of appeals set forth the following factual background:

On November 1, 2006, appellant was indicted on one count of rape, in violation of R.C. 2907.02(A)(2).  The charge stemmed from an incident on August 21, 2006, where appellant, then a Perrysburg Township Police Officer, met the victim at a Fricker's restaurant in Perrysburg, Wood County, Ohio.  The two talked for a few hours and left at closing time.  Although the versions of the events differ, it is undisputed that the two ended up at appellant's apartment.  According to appellant's trial testimony, he and the victim were kissing and it got "hot and heavy." Appellant admitted to placing his hand in the victim's underpants and digitally penetrating her vagina.  Appellant testified that they were engaging in this conduct for approximately ten seconds when the victim stated: "I don't think that we ought to do this." Appellant stated that he immediately leaned back, the victim sat on the couch, and then he turned on the television.  After a bit, the victim asked appellant to take her home; appellant drove the victim home.

The victim testified that at appellant's apartment they each had a glass of wine.  The victim used the restroom, came back in the living room and sat on the couch.  The victim stated that she was waiting for appellant to take her home; she assumed that appellant would take her home because she had finished her wine.  According to the victim, appellant sat down on the couch and began kissing her neck.  The victim testified that she repeatedly told appellant that she was tired and that she just wanted to go home.  The victim testified that she kept inching away from appellant and that he would not get off of her; appellant pushed her underwear down and inserted his finger in her vagina.  The victim testified that they eventually wound up on the floor and that appellant abruptly stopped and took her home.

Following the presentation of the above testimony, as well as the testimony of the investigating officers, individuals present at Fricker's on the night in question, and individuals from the victim's place of

2

employment, the jury convicted appellant of the sole count in the indictment.

(Doc. 8, RX 18, at 2-3; State v. Solether, No. WD-07-053, 2008 WL 4278210, at *1 (Ohio Ct. App. Sept. 19, 2008).)

After a jury trial, Solether was found guilty of a single count of rape.  (Doc. 8, RX 3.)  Prior to sentencing, Solether filed two motions for a new trial, arguing that the victim had lied, and that impermissible expert testimony had been permitted on delayed rape reporting.   (Doc. 8, RX 4, 8.)  The trial court denied both motions. (Doc. 8, RX 7, 9.)  Solether was sentenced to four years imprisonment.  (Doc. 8, RX 9.)

Solether filed a timely notice of appeal on Sept. 6, 2007.  (Doc. 8, RX 10.) Solether presented forth five assignments of error:

> 1. The trial court abused its discretion in denying Solether's motion for new trial which presented compelling new evidence that the State's key witness perjured her testimony at trial.

> 2. The state committed reversible error in failing to produce material exculpatory evidence, in violation of Brady v. Maryland [373 U.S. 83 (1963)] and due process, thereby undercutting Solether's ability to effectively cross-examine the expert witness under the Sixth Amendment.

> 3. The trial court abused its discretion in prohibiting defense counsel from impeaching the complaining witness with evidence of her prior inconsistent conduct.

> 4. The trial court committed reversible error in admitting impermissible expert testimony.

5. Although each trial error and the new evidence standing alone
warrant a new trial the cumulative effect of the trial errors and the
new evidence of Solether's innocence demands a new trial.

(Doc. 8, RX 11.)

Solether subsequently added a sixth assignment of error:

[6.]  Lack of required mens rea in the indictment constitutes a
structural deficiency warranting automatic reversal per Colon; the
same omission from the jury instructions constitutes plain error per
Wamsley; if the indictment is not structurally deficient, then it is plain
error and also ineffective assistance of counsel for failing to object to
indictment and jury instructions.

(Doc. 8, RX 14.)

The court of appeals affirmed the judgment of the trial court.  (Doc. 8, RX 18;

State v. Solether, No. WD-07-053, 2008 WL 4278210 (Ohio Ct. App. Sept. 19,

2008).)

On Nov. 3, 2008, Solether filed a notice of appeal to the Supreme Court of

Ohio.  (Doc. 8, RX 19.)  Solether set forth the following propositions of law:

1. Crim. R. 16 does not require a party to disclose impeachment
material that it does not intend to introduce at trial.

2. Polygraph results are admissible for purposes other than
impeaching or corroborating the examinee's testimony.

3. The state's failure to disclose polygraph results is a Brady violation
when a defendant can articulate an admissible and exculpatory
purpose for which he would use the results at trial.

4. In a rape prosecution, the indictment and jury instructions must
make clear that to find the defendant guilty, the state must prove that
the defendant purposefully compelled the victim to submit by force or
threat to the sexual conduct.

5. A trial court abuses its discretion when it fails to grant a new trial in light of compelling new evidence that the State's key witness perjured her testimony.

6. A trial court abuses its discretion when it fails to conduct a hearing on a motion presenting compelling new evidence that the State's key witness perjured her testimony.

(Doc. 8, RX 20.)

On Feb. 18, 2009, the state high court declined jurisdiction and dismissed the appeal as not involving any substantial constitutional question.  (Doc. 8, RX 22; State v. Solether, 120 Ohio St.3d 1526, 901 N.E.2d 245 (2009).)

Next, Solether filed a petition for post-conviction relief, along with his third motion for a new trial, citing the discovery of a polygraph taken by the victim.  (Doc. 8, RX 23.)  Both requests were denied.  (Doc. 8, RX 25.)  Solether appealed, and presented the following assignments of error:

1. The trial court abused its discretion in denying Solether's petition for post-conviction relief because the state's failure to produce the polygraph results constitutes a due process/Brady violation that undercut Solether's ability to effectively cross-examine the state's expert witness under the Sixth Amendment.

2. The trial court abused its discretion in denying Solether's motion for new trial which presented compelling new evidence of the complaining witness's untruthfulness that would have been used to effectively cross- examine the expert testimony under the Sixth Amendment.

(Doc. 8, RX 27.)  The court of appeals overruled his assignments, and dismissed the appeal.  (Doc. 8, RX 29; State v. Solether, No. WD-08-073, 2010 WL 219313 (Ohio Ct. App. Jan. 22, 2010).)

5

Solether then appealed to the state high court, setting forth the following propositions of law:

> 1. Polygraph results are admissible for purposes other than impeaching or corroborating the examinee's testimony.
>
> 2. The state's failure to disclose polygraph results is a violation of a defendant's Sixth Amendment rights under the Confrontation Clause when the defendant can articulate a ground upon which he should have been permitted to cross-examine an expert witness about said polygraph results.
>
> 3. The state's failure to disclose polygraph results is a Brady violation when a defendant can articulate an admissible and exculpatory purpose for which he would use the results at trial.

(Doc. 8, RX 31.)  [On May 26, 2010, the court declined to exercise its jurisdiction over the appeal.  State v. Solether, 125 Ohio St.3d 1441, 927 N.E.2d 12 (2010).]

Solether filed a timely petition for a writ of habeas corpus.  (Doc. 1.)


## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as

> determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

## III.  PROCEDURAL DEFAULT

The respondent contends that the second and third grounds of the petition have been procedurally defaulted.  (Doc. 8, at 11-18.)

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)).  To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)).  A petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.  Coleman, 501 U.S. at 731-732; Buell, 274 F.3d at 349.

This court does not have jurisdiction to consider a federal claim in a habeas petition which was not fairly presented to the state courts.  Baldwin v. Reese, 541 U.S. 27 (2004); Jacobs v. Mohr, 265 F.3d 407, 415 (6th Cir. 2001).  The Sixth Circuit has stated:

> A claim may only be considered "fairly presented" if the petitioner asserted both the factual and legal basis for his claim to the state courts.  This court has noted four actions a defendant can take which are significant to the determination whether a claim has been "fairly presented":  (1) reliance upon federal cases employing constitutional analysis;  (2) reliance upon state cases employing federal constitutional analysis;  (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific

constitutional right;  or (4) alleging facts well within the mainstream
of constitutional law.

McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), cert. denied, 532 U.S. 958
(2001) (citing Franklin v. Rose, 811 F.2d 322, 325-326 (6th Cir. 1987)).  See also

Hicks v. Straub, 377 F.3d 538, 552-554 (6th Cir. 2004), cert. denied, 544 U.S. 928
(2005).  To "fairly present" the claim to the state courts, a habeas petitioner must

present his claim as a federal constitutional issue, not as an issue arising under

state law.  Koontz v. Glossa, 731 F.2d 365, 368 (6th Cir. 1984).


A.  Second Ground

The second ground of the petition alleges:

The state violated Richard Solether's Sixth Amendment Confrontation
rights, right to present a complete defense, and Fifth and Fourteenth
Amendment rights to a Fair Trial by not disclosing Ms. Boren's failed
polygraph test results.

(Doc. 1, at § 12.)  More specifically, Solether argues that his "rights under the Sixth

Amendment were violated because he was unable to use the non-disclosed

polygraph evidence in order to question Officer Gates or effectively present his

alternative theory of the case."  (Doc. 1, Appx. A, at 16.)  This violated his right to a

fair trial.

The respondent contends that the issue of the failed polygraph was only

presented to the state courts as a Brady violation, and not under the theories

advanced in the habeas petition.  (Doc. 8, at 13-14.)

On direct appeal, Solether argued that there was a Brady violation because the state had failed to disclose "material exculpatory evidence" which undercut Solether's ability to effectively cross-examine the defense's expert.[1] (Doc. 8, RX 11, at 16.)  By failing to disclose the victim's polygraph results, "the state reversibly erred in violation of Brady." Id. at 18.  "By failing to disclose that [the victim] had failed a polygraph examination, the state violated Solether's due process rights and right to adequately confront the witnesses against him." Id. at 20.

The state court of appeals recognized that a Brady violation would be a due process violation.  (Doc. 8, RX 18, at 10 ; Solether, 2008 WL 4278210, at *4.)  The court addressed the arguments under Ohio law advanced by Solether.  The court ruled that "the state did not fail to provide appellant with 'material' evidence as set forth in Brady v. Maryland because the victim's polygraph examination results were inadmissible at trial."  (Doc. 8, RX 18, at 12-13 ; Solether, 2008 WL 4278210, at *6.)

The Sixth Circuit has held that "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998); see also Jalowiec v. Bradshaw, No. 1:03CV0645, 2008 WL 312655, at *24 (N.D. Ohio Jan. 31, 2008).  That the factual basis for the theories is related would not save the

---

[1]  According to Solether, Gates offered expert testimony "that rape victims commonly delay reporting the incident to authorities."  (Doc. 8, RX 11, at 24.)

claim.  Lott v. Coyle, 261 F.3d 594, 607 (6th Cir. 2001), cert. denied, 534 U.S. 1147 (2002).

Solether responds that he did fairly present the second ground through his briefs to both the state court of appeals and to the Supreme Court of Ohio.  (Doc. 9, at 10-13.)  While Solether presented his argument to the state court of appeals more broadly than simply alleging a Brady violation, he did not present it as a violation of his constitutional right to a fair trial[2] (see doc. 8, RX 11, at 16-20), as he presents it now to this court, such that the second ground would have been fairly presented to the state courts.  Wong, 142 F.3d at 322.

## B.  Third Ground

The third ground of the petition alleges:

> The state violated Richard Solether's Sixth Amendment rights to confront his accuser and present a complete defense when he was barred from impeaching Boren with evidence of her prior inconsistent conduct.

(Doc. 1, at § 12.)  Part of the defense theory at trial was that, after the alleged rape, the victim handed Solether a piece of paper to exchange phone numbers (but could not find a pen to do so).  The victim testified that she never gave such a paper to Solether.  At trial, "defense counsel attempted to present the complaining witness

---

[2]  See, e.g., Faretta v. California, 422 U.S. 806, 818-819 (1975) (discussing Sixth and Fourteenth Amendment rights to make defense in criminal trial).

11

with that very piece of paper as evidence of her prior inconsistent conduct." (Doc. 1, Appx. A, at 17.)

The trial court upheld the defense's objection, a "flawed interpretation of the rules of evidence." (Doc. 1, Appx. A, at 17.) The petition alleges a violation of the Confrontation Clause:

> Following the state's fundamentally mistaken view of the evidentiary rules, the trial court erroneously concluded to Solether's prejudice that the paper was extrinsic evidence and that extrinsic evidence offered for the sole purpose of impeaching witness credibility is inadmissible. In barring defense counsel from admitting the paper into evidence and precluding the jury from assessing Boren's demeanor after being confronted with this crucial piece of evidence, the trial court deprived Solether of his Sixth and Fourteenth Amendment rights.

(Doc. 1, Appx. A, at 18.)

The respondent contends that the issue was not fairly presented to the state courts as a federal constitutional issue, but merely as a matter of Ohio evidentiary law. (Doc. 8, at 16-18.) This court does not have jurisdiction to consider a federal claim in a habeas petition which was not fairly presented to the state courts. Baldwin, 541 U.S. 27; Jacobs, 265 F.3d at 415.

On direct appeal, Solether's third assignment of error was: "The trial court abused its discretion in prohibiting defense counsel from impeaching the complaining witness with evidence of her prior inconsistent conduct." (Doc. 8, RX 11, at 20.) Solether argued that the trial court erred in ruling that the paper was inadmissible as extrinsic evidence. His arguments relied exclusively on state law, namely, the interpretation of the Ohio Rules of Evidence. (Doc. 8, RX 11, at 21-23.)

Solether now argues that "it is abundantly clear that Solether's entire argument at the state court level focused on his trial counsel's inability to meaningfully cross-examine and confront the state's witness due to the trial court's erroneous exclusion of a key exhibit from evidence. . . [which] is the crux of the Sixth Amendment Confrontation Clause." (Doc. 9, at 3.)

However, Solether did not raise the Confrontation Clause in his third assignment of error on appeal, neither explicitly nor implicitly.  Instead, Solether argued this claim as a violation of the rules of evidence, and did not rely on federal cases, or "state cases employing federal constitutional analysis."  See generally doc. 8, RX 11, at 21-23.  The state court of appeals therefore did not rule on any federal issue, but found that the trial court had not abused its discretion, and found the assignment of error not well-taken.  (Doc. 8, RX 18, at 16; Solether, 2008 WL 4278210, at *6-*7.)  Moreover, the Supreme Court of Ohio will not consider a constitutional question which was not raised and argued in the lower courts.  Leroy v. Marshall, 757 F.2d 94, 99 (6th Cir.), cert. denied, 474 U.S. 831 (1985); State v. Phillips, 27 Ohio St.2d 294, 302, 272 N.E.2d 347, 352 (1971).

The second and third grounds were not fairly presented to the state courts as a federal constitutional issue.  The petition cannot be granted on the basis of the second or third ground.

13

## IV.  CUMULATIVE ERRORS

The fourth ground of the petition is:  "The cumulative effect of all errors violated petitioner's due process right to a fair trial."  (Doc. 1, at § 12.)

The respondent contends that the fourth ground does not present a constitutional claim.  (Doc. 8, at 10.)  Solether does not respond to this argument. See generally doc. 9.

The respondent is correct that, under Sixth Circuit precedent, claims of cumulative error are not cognizable in a habeas proceeding.  See, e.g., Hoffner v. Bradshaw, 622 F.3d 487, 513 (6th Cir. 2010) (citing Moore v. Parker, 425 F.3d 250, 256 (6th Cir. 2005), cert. denied, 549 U.S. 1027 (2006)); Rafferty v. Hudson, No. 5:08CV1973, 2009 WL 2151832, at *8 (N.D. Ohio July 14, 2009).

The petition cannot be granted on the basis of the fourth ground.

## V.  ALLEGED BRADY VIOLATION

The first ground of the petition is that: "The state violated Richard Solether's due process rights when it failed to disclose that Ms. Boren had failed a polygraph test."  (Doc. 1, at § 12.)  Solether argues that a constitutional violation, under Brady v. Maryland, occurs "when the state fails to disclose evidence materially favorable to the accused, either because it is directly exculpatory or because its impeachment value is exculpatory."  (Doc. 1, Appx. A, at 7, citing Brady, 373 U.S. at 87.)

14

On appeal, Solether asserted that there was a line of cases in which the Supreme Court of Ohio had distinguished the use of polygraph evidence which was offered to impeach or corroborate trial testimony from those cases in which such evidence was offered for other purposes.  (Doc. 8, RX 11, at 16-17.)  Based on these Ohio cases, Solether argued the victim's "polygraph result of untruthfulness was admissible, exculpatory to Solether, and should have been disclosed during discovery," leading to a violation of Brady.  Id. at 18.  Defense counsel would have used the victim's polygraph results "to impeach Gates' expert testimony regarding his implied assertion that no red flags were present in this case . . ."  Id. at 19.

The state court of appeals ruled as follows on this issue:

In Brady v. Maryland the Supreme Court of the United States held that suppression of material evidence violates a defendant's due process rights.  Evidence is "material" where there exists a "reasonable probability" that had the evidence been disclosed at trial the outcome would have been different.  United States v. Bagley (1985), 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481.  Applying Brady to polygraph examination results, the Supreme Court later held that the state's failure to disclose the results of a polygraph examination of a state witness did not deprive the defense of material evidence.  Wood v. Bartholomew (1995), 516 U.S. 1, 116 S.Ct. 7, 133 L.Ed.2d 1.  The court reasoned:

"The information at issue here, then – the results of a polygraph examination of one of the witnesses – is not 'evidence' at all.  Disclosure of the polygraph results, then, could have had no direct effect on the outcome of trial, because respondent could have made no mention of them either during argument or while questioning witnesses."  Id. at 6.

The court discounted the argument that the discovery of the test results could have led to admissible evidence as too speculative.  Id. at 6-7.

15

In State v. Souel (1978), 53 Ohio St.2d 123, 372 N.E.2d 1318, the Supreme Court of Ohio set forth the criteria for the admissibility of polygraph examination results.  Such criterion includes the written stipulation of the parties and is still subject to the discretion of the trial court.  Id. at syllabus.  In State v. Davis (1991), 62 Ohio St.3d 326, 581 N.E.2d 1362, the court addressed the issue of the discoverability of the evidence, rather than its use at trial.  Specifically, the court addressed the issue of "whether the state is required to provide, through discovery, the results of polygraph tests that were performed on persons other than the defendant or any co-defendant(s)."  Id. at 341, 581 N.E.2d 1362.  The court dismissed the appellant's argument that the discovery of the results could have led to additional evidence that could have aided his defense.  Id. at 342, 581 N.E.2d 1362.  The court further explained: "This court has never held that a defendant is entitled to the results of polygraph examinations, nor has this court held that polygraph examinations are scientific tests which are discoverable pursuant to Crim.R. 16." Id. Accord State v. Hairston, 9th Dist. No. 05CA008768, 2006-Ohio-4925.

Appellant acknowledges that the victim's polygraph test results were inadmissible to impeach her testimony; however, appellant contends that the test results were admissible to impeach the testimony of Officer Gates who, according to appellant, testified as to the veracity of the victim's statements.  Appellant relies primarily on three cases to support his argument that polygraph results can be admissible for other purposes.  In Criss v. Springfield Twp. (1990) 56 Ohio St.3d 82, 564 N.E.2d 440, Moss v. Nationwide Mut. Ins. Co. (1985), 24 Ohio App.3d 145, 493 N.E.2d 969, and State v. Manning (1991), 74 Ohio App.3d 19, 598 N.E.2d 25, the courts permitted the introduction of polygraph examination results for various reasons.  In Criss, the court held that where polygraph examinations are conducted during a criminal investigation the examination results are admissible to show the state of mind of the police officers who were defending against a claim of malicious prosecution.  Id. at 87, 564 N.E.2d 440.  In reaching its decision, the court noted that the concerns in State v. Souel, supra, were not implicated because the polygraph test results were not "being offered for the purpose of corroborating or impeaching testimony at trial." Id. at 86, 372 N.E.2d 1318.  Next, in Moss, which involved an insured's bad faith claim, the court, first noting that Souel does not control in a civil case setting, permitted the use of the insured's polygraph examination test results to show the basis for the insurer's denial of coverage.  Id. at 147-148, 372 N.E.2d 1318.  Finally, in

16

Manning the court held that polygraph examination results from the deceased victim were admissible to rebut the appellant's self-defense claim.

Criss and Moss are immediately distinguishable based upon the fact that the evidence was admitted in a civil, rather than a criminal, trial. Further, the Criss court stressed that the evidence was to be used to establish the officers' state of mind and not to corroborate or impeach trial testimony.  In Manning, the court did permit the polygraph testimony of the deceased victim to be admitted during trial.  On appeal, the court, citing Criss, held that the testimony was admissible to demonstrate the state of mind of the appellant and to rebut her claim of self-defense.  Manning, 74 Ohio App.3d at 25-26, 598 N.E.2d 25.  Unlike Manning, appellant argues that the victim's polygraph examination was admissible to impeach Officer Gates' trial testimony. As set forth above, polygraph examination results are not admissible to impeach or corroborate trial testimony.

Based on the foregoing, we find that the state did not fail to provide appellant with "material" evidence as set forth in Brady v. Maryland because the victim's polygraph examination results were inadmissible at trial.

(Doc. 8, RX 18, at 10-13; Solether, 2008 WL 4278210, at *4-*6.)

The question before this federal habeas court is whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Federal habeas relief is not available for a claimed violation of state law, thus any alleged violation of Ohio law is not properly before this court.  See Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  Here, the question is whether the state court's decision involved an objectively unreasonable application of clearly established federal law.

Solether represents that:

> . . . the Sixth Circuit and other federal circuits have held that use of a state court rule to preclude both disclosure of polygraph results and use of such results for an admissible purposes is contrary to, and an objectively unreasonable application of, clearly established Supreme Court precedent recognizing the fundamental importance of this right.

(Doc. 1, Appx. A, at 16.)  In support of this argument, Solether relies primarily on an unreported, 1988 Sixth Circuit case, Leal v. Morris.  Id.

It is not accurate to characterize Leal as ruling that precluding disclosure or use of polygraph results was "contrary to, and an objectively unreasonable application of, clearly established Supreme Court precedent."  The discussion in Leal primarily concerned Ohio law:

> In Ohio, polygraph evidence was not then, and is not now, admissible except under specified conditions which require the consent of both the defendant and the state.  Even then, admissibility is subject to the discretion of the trial judge, who may refuse to accept such evidence if not convinced that the examiner was qualified or that the test was conducted under proper conditions.  State v. Souel, 53 Ohio St.2d 123, 132, 372 N.E.2d 1318, 1323 (1978); State v. Levert, 58 Ohio St.2d 213, 215, 389 N.E.2d 848, 850 (1979); State v. Woodruff, 10 Ohio App.3d 326, 327, 462 N.E.2d 457, 459 (1983).  Furthermore, the state may, by a motion in limine, obtain a pretrial order prohibiting references to the results of polygraph tests.  State v. Whitmeyer, 20 Ohio App.3d 279, 279-80, 485 N.E.2d 1055, 1056 (1984).

> Both the prosecutor and Costilla's counsel agreed to a plea bargain that required Costilla to pass a polygraph test with respect to naming the participants in the crimes.  No judicial action was involved in the plea bargain.  The tests were performed in order to permit the prosecutor to exercise the discretion committed to his office, and not for the purpose of introducing the test results as evidence.  The trial judge found that the prosecution, in good faith, believed that the test results were not discoverable.

> Although polygraph test results may be discoverable for reasons other than admitting them into evidence, petitioner's concern has always

been to use the test results to impeach Costilla.  Except where Souel requirements are met, Ohio law prohibits use of polygraph test results for purposes of corroboration or impeachment.  See Levert, 58 Ohio St.2d at 215, 389 N.E.2d at 850.

Leal v. Morris, 842 F.2d 332, 1988 WL 25007, at *8 (6th Cir. 1988) (TABLE, text in WESTLAW).  There is no finding in Leal that precluding disclosure or use of polygraph results was contrary to, or an objectively unreasonable application of, Supreme Court precedent.

In fact, according to the Sixth Circuit, "the Supreme Court has held that a prosecutor has no constitutional duty even to disclose to a criminal defendant the fact that a witness has 'failed' a polygraph test."  King v. Trippett, 192 F.3d 517, 522 (6th Cir. 1999) (citing Wood v. Bartholomew, 516 U.S. 1, 5-6 (1995) (per curiam)) (emphasis in original).  See also Hill v. Mitchell, No. 1:98-CV-452, 2006 WL 2807017, at *66 (S.D. Ohio Sept. 27, 2006) (results of polygraph exams generally not discoverable as Brady evidence); State v. Davis, 62 Ohio St.3d 326, 342, 581 N.E.2d 1362, 1376 (1991) (per curiam), cert. dismissed, 506 U.S. 803 (1992) (Ohio Supreme Court has never held defendant is entitled to results of polygraph, nor that polygraph exams are discoverable scientific tests).

In Wood, the Court stated that "evidence is 'material' under Brady, and the failure to disclose it justifies setting aside a conviction, only where there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different."  Wood, 516 U.S. at 5 (internal citations omitted).  Under state (Washington) law in that case (and similar to Ohio law), "the polygraph

19

results were inadmissible . . . , even for impeachment purposes, absent a stipulation

by the parties." Id. at 6. Thus, the court found that:

> . . . the results of a polygraph examination of one of the witnesses is
> not "evidence" at all.  Disclosure of the polygraph results, then, could
> have had no direct effect on the outcome of trial, because respondent
> could have made no mention of them either during argument or while
> questioning witnesses.

Wood, 516 U.S. at 6.  The Court reversed the granting of habeas relief.

Here, too, the state court ruled that the victim's polygraph examination

results were inadmissible at trial.  (Doc. 8, RX 18, at 13; Solether, 2008 WL

4278210, at *6.)  This court must presume that the Ohio state courts correctly

interpreted Ohio evidence law in their evidentiary rulings.  Small v. Brigano, No.

04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005).

In King, the Sixth Circuit rejected due process and Confrontation Clause

claims where the trial court had refused to allow the defense to impeach a witness

concerning his polygraph exam.  King, 192 F.3d 517.  See also State v. Levert, 58

Ohio St.2d 213, 215, 389 N.E.2d 848, 850 (1979) (per curiam) (no constitutional

right to have jury hear results of polygraph).  Discussing the Supreme Court's

decision in United States v. Scheffer, 523 U.S. 303 (1998), the court pointed out that

"Scheffer confirmed that no consensus exists that polygraph evidence is inherently

reliable; states are free to enact per se prohibitions on introduction of polygraph

evidence for precisely this reason."  King, 192 F.3d at 523.  If  a per se prohibition

on the introduction of polygraph evidence is constitutionally acceptable, it stands to

reason that lesser limitations may pass muster.  In any event, Solether presents no Supreme Court precedent to the contrary.

The court in King also took note of the Supreme Court's acceptance of the wide latitude granted to trial judges to impose reasonable limits on cross-examination.  King, 192 F.3d at 524.  The court found that the state court's decision to refuse cross-examination of the witness with his polygraph results did not involve an unreasonable application of clearly established federal law, as determined by the Supreme Court.  Id. at 525.

In this case, because the polygraph exam was inadmissible under state law, it was not "evidence" implicating Brady.  Wood, 516 U.S. at 5-6.  Solether has failed to establish that the state court decision was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.

## VI.  ALLEGED MISTAKE OF FACT

In a footnote in his Traverse, Solether suggests that "the state courts also committed a mistake of fact warranting habeas relief."  (Doc. 9, at 15 n.6.)

Solether cannot raise a new ground for habeas relief in his Traverse.  Any alleged violations of constitutional rights which are first raised in a traverse, rather than the habeas petition, are not properly before this court, and will not be considered.  Tyler v. Mitchell, 416 F.3d 500, 504 (6th Cir. 2005), cert. denied, 547

U.S. 1074 (2006) (citing cases); Jenkins v. Welch, No. 4:09CV637, 2010 WL
1948297, at *15  (N.D. Ohio Apr. 26, 2010); Sowell v. Collins, 557 F.Supp.2d 843,
889 (S.D. Ohio 2008).


SUMMARY

The petition for a writ of habeas corpus should be denied.

The petition cannot be granted on the basis of the second or third grounds
because these claims were not fairly presented to the state courts as a federal
constitutional issue.  The petition cannot be granted on the basis of the fourth
ground because claims of cumulative error are not cognizable in habeas.

As to the alleged Brady violation, Solether has failed to establish that the
state court decision was contrary to, or involved an unreasonable application of
clearly established federal law, as determined by the Supreme Court of the United
States.

22

RECOMMENDATION

The petition for a writ of habeas corpus should be DENIED.


Dated:   Mar. 14, 2011                      /s/ Kenneth S. McHargh
                                         Kenneth S. McHargh
                                         United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).